RETAIL STORE EMPLOYEES UNION, LOCAL 876, UFCW, AFL–CIO and Gladys E. Coleman, on behalf of themselves and other employees similarly situated, Plaintiffs,

v.

MONTGOMERY WARD & COMPANY, INCORPORATED, an Illinois corporation, Defendant.

Civ. A. No. 80–71207.

United States District Court, E. D. Michigan, S. D.

April 30, 1982.

As Amended June 23, 1982.

John R. Runyan, Jr., Detroit, Mich., for plaintiffs.

Joseph Kochis, Detroit, Mich., for defendant.

## MEMORANDUM OPINION

JULIAN ABELE COOK, Jr., District Judge.

Plaintiff, Gladys E. Coleman [Coleman], on behalf of herself and others similarly situated, and Plaintiff, Retail Store Employees Union Local 876, UFCW, AFL–CIO [Union], seek a summary judgment, pursuant to *Fed.R.Civ.P.* 56.[1] Defendant, Montgomery Ward & Company, Inc. [Montgomery Ward], has filed a Cross Motion for Summary Judgment.

Coleman was continuously employed by Montgomery Ward as a salesperson at its Southgate, Michigan store from August of 1960 to May of 1979. In 1979, she was involuntarily retired by Montgomery Ward because of her age (to wit, sixty-five years of age). Union has been the collective bargaining representative of a small group of Montgomery Ward employees within the Detroit, Michigan area since 1958. The retirement program, under which Coleman was retired, was originally effective January of 1977. It is a voluntary plan which was ratified on behalf of its union members, including Coleman, in October of 1974. Since the Plan's inception, there have been a number of amendments to the voluntary program; however, none of these amendments relate to the normal retirement date.

In a letter, dated April 18, 1979, Coleman and the Union filed a charge with the United States Department of Labor, pursuant to Section 7(d)(1) of the Age Discrimination in Employment Act [ADEA] of 1967, as amended, 29 U.S.C. § 626(d)(1), alleging that Montgomery Ward had discriminated against Coleman because of her age. On or about July 10, 1979, Coleman filed a Complaint with the Michigan Department of Civil Rights, as required by Section 14(b) of the ADEA, as amended, 29 U.S.C. § 633(b), alleging age discrimination. In addition, Coleman filed a charge of discrimination with the United States Equal Employment Opportunity Commission [EEOC] on January 30, 1980. Coleman's claim of discrimination was rejected in each case. On March 24, 1980, a Complaint was filed with this Court, pursuant to Section 16 of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 216(b). On May 29, 1981, a hearing was held under advisement, pending EEOC's final interpretation of the ADEA.

Plaintiff claims that she should have been afforded protection of the ADEA's proscription against involuntary retirement. The Act prohibits an employer from discharging any individual because of age.[2] As original-

---

1. In her Complaint, Coleman prays for: (1) a Declaratory Judgment, pursuant to 28 U.S.C. § 2201, declaring unlawful and violative of the rights of Plaintiffs, the Defendant's practice of involuntarily retiring at age sixty-five or before employees represented by Plaintiff Union, (2) a Preliminary and Permanent Injunctive Relief, pursuant to Rule 65, Fed.R.Civ.P., restraining and enjoining Defendants from continuing practice of involuntarily retiring employees at the age of sixty-five, (3) an award of compensation lost as a result of her involuntary retirement, (4) an award of attorney fees, and (5) any other legal or equitable relief to which the Plaintiff may be entitled.

2. The Act provides, in part, that it shall be unlawful for an employer:

    (1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age;

    (2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age; or

    (3) to reduce the wage rate of any employee in order to comply with this chapter.

29 U.S.C. § 623(a) (1976).

ly passed by the Congress in 1967, the mandatory retirement provision included workers only up to the age of sixty-five. A 1978 amendment extended the protection from involuntary retirement to the age of seventy. *See Age Discrimination in Employment Act Amendments of 1978*, Pub.L.No.95–256, § 3(a), 92 Stat. 189 (1978). At the time of the 1978 amendment, she was sixty-four years of age. Thus, it is Coleman's position that the 1978 amendment prohibits mandatory retirement before the age of seventy.

Defendant, Montgomery Ward, contends that this Plan and similar involuntary retirements of union workers prior to January 1, 1980 did not violate the ADEA. According to Defendant, 29 U.S.C. § 631 (1980) specifically exempted workers over sixty-five years of age from the protection afforded by the Act. Defendant admits that the 1978 amendment, if applied today, would prohibit an involuntary retirement of an employee, such as Coleman's. However, Montgomery Ward asserts that the added provision which extends the retirement age from sixty-five to seventy years of age does not apply to Coleman or other Montgomery Ward employees because of the delayed effective date in the provision.

In pertinent part, the 1978 amendment provides:

> The amendment made by subsection (a) of this section ... shall take effect on the date of enactment of this Act (April 6, 1978), except that, in the case of employees covered by a collective bargaining agreement which is in effect on September 1, 1977, which was entered into by a labor organization ... and which would otherwise be prohibited by section 3(a) of this Act ... the amendment made by subsection (a) of this section (amending subsection (f)(2) of this section) *shall take effect upon the termination of such agreement or on January 1, 1980, whichever occurs first.* (emphasis added)

S.Rep.No.493, 95th Cong., 2d Sess. 3, *reprinted in* 1978 U.S.Code Cong. & Ad.News 504, 514.

Montgomery Ward argues that, on the basis of the facts in this case, the 1978 amendment does not protect its employees from involuntary retirement at age sixty-five until after the delayed effective date of January 1, 1980.

The threshold question to be resolved is whether this Court should look behind Montgomery Ward's Retirement Security Plan to determine if its mandatory retirement provision was the subject of a negotiated reciprocal agreement or concession.

Section 4(a)(1) of the ADEA, 81 Stat. 603, makes it unlawful for an employer "to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's age...." 29 U.S.C. § 623(a)(1). Until April 6, 1978, the ADEA permitted mandatory retirement, pursuant to a *bona fide* seniority system or employee benefit so long as the Plan was not a subterfuge to evade the purposes of the Act. The Third and Fifth Circuits have ruled that a pension plan which requires mandatory retirement prior to the age of sixty-five, does not violate the ADEA. *Zinger v. Blanchette*, 549 F.2d 901 (3d Cir. 1977); *Brennan v. Taft Broadcasting*, 500 F.2d 212 (5th Cir. 1974).

Raising the ADEA's mandatory retirement age from sixty-five to seventy would be a meaningless act if employees were subjected to mandatory retirement because of provisions that are, or were, contained in collective bargaining agreements or employee benefit plans. Therefore, in 1978, Congress amended 29 U.S.C. § 623(f)(2) to provide that "... no such seniority system or employee benefit plan shall require or permit the involuntary retirement of any individual (between the ages of 40 and 70) ... because of the age of such individual." *See Age Discrimination in Employment Act Amendment of 1978*, Pub.L.No.95–256, § 2(a), 92 Stat. 189. The effective date of the amendment was April 6, 1978. The amendment further provided that in the case of employees who were covered by collective bargaining agreements, the effec-

tive date for prohibiting their involuntary retirement prior to the age of seventy would be January 1, 1980 or upon the termination of the agreement, whichever occurs first. The reason for the delay in the effective date of this provision is to provide employers with a sufficient opportunity to adjust personnel policies which would reflect the changes in existing law that had been made by these amendments. S.Rep. No.493, 95th Cong., 2d Sess. 3, *reprinted in* 1978, U.S.Code Cong. & Ad.News 504, 510.

Plaintiff cites *Anness v. United Steel Workers of America*, 26 FEP Cases 1340 (N.D.Ohio, 1981) for the proposition that one must look behind the collective bargaining agreement between employer and union in order to determine whether Montgomery Ward's mandatory retirement provision is part of a collective bargaining agreement which would qualify for an exemption under the effective date of the 1978 amendment. In *Anness*, the Court was faced with the propriety of a mandatory retirement which took place between the general effective date of the ADEA amendment (April 6, 1978) and the delayed effective date specifically provided under the Act for collective bargaining agreements. In determining whether this collective bargaining agreement met the requirements of the ADEA, the Court looked behind the collective bargaining agreement to determine if the mandatory retirement provision within the agreement had been negotiated between employer and union.

*Anness* sets forth three questions which should be answered prior to determining whether there was an exemption to the general effective date of the 1978 amendment. According to the Court, these inquiries are as follows: (1) Was the pension plan negotiated as part of a collective bargaining agreement?, (2) Have there been reciprocal agreements and concessions made in exchange for the mandatory retirement provision?, and (3) Has the contract been negotiated in good faith? The District Court eventually found that the mandatory retirement provision had been bargained apart from the collective bargaining agreement.

The EEOC's guidelines with respect to the effective date for the amendment to 29 U.S.C. § 623(f)(2) provide no support to *Anness'* argument that one must look behind a collective bargaining agreement in order to determine if a mandatory retirement provision has been the subject of negotiation between employer and union. The guidelines merely reiterate the collective bargaining exception to the 1978 ADEA amendment. *See* 44 Fed.Reg. 68858 (1979) (to be codified at 29 C.F.R. § 1625.9(d)(2)). Section 1625.9 provides the following factors for determining if an employee benefit plan is the result of collective bargaining:

(i) the retirement age specified in the plan is 65 or above; (ii) the retirement is authorized by the express terms of a bona fide seniority system or bona fide employee benefit plan which is not a subterfuge to evade the purposes of the Act; and (iii) those terms have been adopted no later than September 1, 1977 and are pursuant to a collective bargaining agreement in effect on September 1, 1977.

The EEOC guidelines only require that the employment benefit plan be adopted "pursuant to a collective bargaining agreement." The Congressional intent was to exempt agreements which had been negotiated prior to January 1, 1977. There is nothing within the EEOC guidelines which mention that the mandatory retirement age must be the subject of specific negotiation.

The legislative history behind the 1978 amendment to the ADEA provides support for the EEOC guidelines that were recently issued. The Senate Report refrains from analyzing whether specific concessions, which have been made in return for mandatory retirement provisions, are necessary in order to qualify the provisions as part of a collective bargaining agreement. The Report recognizes that (1) contracts between employers and union members have been negotiated in good faith, and (2) reciprocal agreements and concessions have been made in exchange for the mandatory retirement provision. *See* S.Rep.No.493, 95th

Cong., 2d Sess. 3, *reprinted in* 1978 U.S. Code Cong. & Ad.News 504, 514.

To the extent that Montgomery Ward's retirement provisions are encompassed within a retirement security plan adopted by union members, Defendant is not precluded from retiring Coleman, and others similarly situated, prior to January 1, 1980. Congress neither intended wholesale invalidation of retirement plans which were instituted in good faith, nor did it intend to require employers to bear the burden of showing a business or economic purpose in order to justify preexisting plans. *See United Airlines, Inc. v. McMann,* 434 U.S. 192, 98 S.Ct. 444, 54 L.Ed.2d 502 (1977).

Finally, Coleman indicates that if this Court upholds the Montgomery Ward Retirement Security Plan, union and non-union employees will not be treated equally. Coleman refers to Montgomery Ward's practice of maintaining non-union members, who have reached the age of sixty-five on its payroll. In any given company, there cannot be a union without management, and management personnel cannot be in the union. Thus, where there is a union, there may be non-union employees, as well. There has been no allegation in Coleman's Complaint that Montgomery Ward's practice of maintaining non-union workers on its payroll beyond the age of sixty-five was an attempt to discourage potential members from joining a union.

Therefore, for the reasons as indicated herein, Defendant's Motion for Summary Judgment shall be, and is, granted.